(No. 34785.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE JOHNSON, Plaintiff in Error.

*Opinion filed November 26, 1958.*

GEORGE JOHNSON, *pro se.*

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, for the People.

Mr. Justice Davis delivered the opinion of the court:

In 1939, George Johnson, defendant, was convicted of the crime of murder in the criminal court of Cook County, in a trial by the court without a jury, and was sentenced to the penitentiary for a term of 99 years. In 1957 he obtained a bill of exceptions under Rule 65—1 (Ill. Rev. Stat. 1957, chap. 110, par. 101.65—1,) and pursuant thereto petitioned this court, *pro se in forma pauperis,* for a writ of error. The record before the court consisted of the common-law record and the bill of exceptions, but the errors assigned were based solely on questions predicated on the bill of exceptions. After full consideration of the errors assigned, we denied the petition in October, 1957. Defendant then, *pro se,* sued out a second writ of error from this court and filed therewith the common-law record and the bill of exceptions theretofore filed with the petition for writ of error and thereby sought a further review of the original judgment of conviction. The State filed a motion to dismiss the writ of error on the ground that our decision on the petition for writ of error under Rule 65—1 is *res judicata.* The motion to dismiss was taken with the case.

An understanding of the issues presented by the motion requires a consideration of the philosophy and purpose of Rule 65—1 and of the events leading to its adoption. In Illinois, review of criminal convictions is obtained through writ of error, (Ill. Const. art. VI, secs. 8 and 11; *People* v. *Johnson,* 285 Ill. 194,) and it has long been provided by statute that a writ of error in a criminal case is a writ of right. (Ill. Rev. Stat. 1957, chap. 38, par. 769.1.) The scope of review on a writ of error is determined by the nature of the record brought before the reviewing court. The record on review may consist solely of the common-law or mandatory record, which includes the indictment, arraignment, plea, verdict and judgment. If this is the sole record before the reviewing court the only errors which are con-

sidered are those appearing on the face of those documents, and errors in the admission and exclusion of evidence, questions relating to the sufficiency of the evidence, incompetency of counsel, prejudicial remarks or conduct by the prosecuting attorney or the trial judge, instructions, rulings on motions, and the like will not be considered. (*People* v. *Thompson*, 413 Ill. 53; *People* v. *Twitty*, 405 Ill. 60; *People* v. *Loftus*, 400 Ill. 432; *People* v. *Yetter*, 386 Ill. 594.) In order to obtain a review of alleged errors as to these matters, the record must contain a properly certified bill of exceptions or transcript of the proceedings at the trial, which consists of a transcript of the testimony, the rulings of the trial judge on all motions and any other matters upon which rulings were made, instructions given and refused, and any other proceedings before the trial court which defendant desires to bring before the reviewing court. *People* v. *Loftus*, 400 Ill. 432; *People ex rel. Iasello* v. *McKinlay*, 409 Ill. 120.

Rule 65 of this court provides that a bill of exceptions must be certified by the trial judge and filed in the trial court within 100 days following the judgment of conviction or within any extended period of time granted within the 100 days, or any extensions thereof. (Ill. Rev. Stat. 1957, chap. 110, par. 101.65.) The common-law record and the bill of exceptions present a complete record of all that transpired at the trial, and on such record a complete review of the judgment of conviction is afforded. For many years it has been the practice in Illinois to furnish indigent defendants with the common-law record without cost. However, prior to the adoption of our Rule 65—1, no method was provided whereby such defendants, except in a capital case, could obtain a free bill of exceptions. The practical result was that an indigent defendant, in other than a capital case, who sought a review of his conviction, was limited on review to those matters appearing on the face of the common-law record. In many such cases these defendants

sought to raise on the writ of error questions relating to the evidence, rulings on motions, and other matters *dehors* the common-law record, and we uniformly held, in the absence of a properly certified bill of exceptions, that these questions would not be considered. *People* v. *Orr,* 10 Ill.2d 95; *People* v. *Sheppard,* 415 Ill. 497; *People* v. *O'Connell,* 411 Ill. 591.

A series of decisions of the United States Supreme Court, the Federal district courts and Courts of Appeal, and the Supreme Court of Illinois, involving the adequacy and availability of existing post-trial remedies in Illinois in the light of the due-process requirements of the constitution of the United States, which culminated in *Young* v. *Ragen,* 337 U.S. 235, 93 L. ed. 1333, led to the indication by the United States Supreme Court in *Young* that each State must afford prisoners "some clearly defined method by which they may raise claims of denial of federal rights." This decision was preceded by *Carter* v. *Illinois,* 329 U.S. 173, 91 L. ed. 172, which had announced that prisoners must have "the opportunity to open an inquiry into the intrinsic fairness of a criminal process even though it appears proper on the surface" so that "questions of fundamental justice protected by the Due Process Clause may be raised * * * dehors the record." (See Commentary to Post-Conviction Hearing Act by Albert E. Jenner, Jr., Smith-Hurd Ill. Ann. Stat. preceding chap. 38, par. 826.) In response to this pronouncement, the Illinois legislature in 1949 enacted the Post-Conviction Hearing Act which provided a remedy for persons confined in the penitentiary in violation of their constitutional rights. Ill. Rev. Stat. 1957, chap. 38, pars. 826-832, incl.

Thereafter, Judson Griffin and James Crenshaw, prisoners, filed a petition under that act in which they alleged that at the time of their conviction they were indigent and unable to purchase a bill of exceptions; that they had made a timely motion for a free bill of exceptions which was

denied; and that the failure of the State to provide them with a free bill of exceptions, without which a full appellate review could not be obtained, deprived them of their right to an effective appellate review and constituted a denial of due process and equal protection of the law. The trial court denied the post-conviction petition without a hearing, and we denied a writ of error, stating that no substantial constitutional question was presented. The United States Supreme Court granted *certiorari* and held that the petitioners had been deprived of equal protection of the law (and perhaps due process) by the failure of the State to provide some method whereby they could obtain a full review of the judgment of conviction. (*Griffin* v. *Illinois,* 351 U.S. 12, 100 L. ed. 891.) The cause was remanded to this court for further proceedings, and in compliance with the mandate of the United States Supreme Court we remanded the cause to the trial court with directions to provide the petitioners with a free transcript. *People* v. *Griffin,* 9 Ill.2d 164.

We recognized that the decision of the United States Supreme Court affected not only the petitioners, but all persons similarly situated, and adopted Rule 65—1 to provide a procedure for indigent defendants which would meet the standards of the due-process and equal-protection clauses of the 14th amendment. In substance, the rule provides that persons convicted after the date of the opinion of the United States Supreme Court in *Griffin* may obtain a free transcript of the proceedings at the trial or bill of exceptions by establishing that they are indigent and therefore unable to pay the court reporter for typing the transcript. As to such persons the 100-day limitation of Rule 65 is applicable and the bill of exceptions must be certified by the trial judge and filed in the trial court within 100 days after the judgment of conviction, or within an extended period allowed within the 100-day period, or any extensions thereof. If this requirement is met, such persons, as a matter of right, are entitled to prosecute a writ of error

in this court and file therein a complete record, which includes both the common-law record and the bill of exceptions, and we can determine all assignments of error based thereon.

As to persons convicted prior to April 23, 1956, the date of the *Griffin* decision, it was obvious that they had failed to file their bill of exceptions within the required 100 days after their conviction, and under Rule 65 the trial court was therefore without authority to certify the bill of exceptions or extend the time for its subsequent filing. (*People* v. *Kidd,* 401 Ill. 230.) However, we provided in Rule 65—1 (2) that such persons are entitled to a free transcript of the proceedings at the trial or bill of exceptions upon a proper showing of indigence on or before March 1, 1957, even though more than 100 days had elapsed since their conviction, but they are required to petition this court for a writ of error to review any alleged errors which occurred at the trial. This rule authorizes the State's Attorney to file an answer to the petition within 30 days, and we appoint counsel for the petitioner without cost, if he requests such assistance in the presentation of his petition. The petition, common-law record, and bill of exceptions, as well as the answer of the State's Attorney, if any, are carefully considered by the court. If from examination of the record, it does not appear that there is reasonable ground to believe that prejudicial error occurred in the proceedings which resulted in the petitioner's incarceration, the petition is denied. When a petition is denied a memorandum order is prepared which briefly recites the facts of the case with references to the record, sets forth the reasons and cites the authorities upon which the court's determination is based. Such order is not reported in the Illinois Reports but copies of it are mailed to the petitioner or his attorney, if he is represented by counsel, as well as to the Attorney General of the State, who, in turn, furnishes copies of the order to the State's Attorneys of the counties of Illinois.

In addition, the Clerk of this court mails copies of all such orders to all circuit and criminal court judges of the State, and to such libraries and individuals as may request them. If the writ of error is allowed, the cause proceeds as any other writ of error. Counsel is then appointed, in event request for counsel had not been previously made, briefs are submitted and oral argument is allowed.

In the present case, the defendant, who was convicted prior to the decision in *Griffin,* obtained a bill of exceptions under Rule 65—1 and petitioned this court for writ of error under the procedure above outlined. The record before the court consisted of the common-law record, the bill of exceptions and the petition for writ of error, but the errors assigned were based solely on questions presented in the bill of exceptions. We considered the petititon and bill of exceptions and entered a memorandum order denying the writ. It is this judgment of denial which the State contends is *res judicata* of all errors assigned in the second writ of error. The question of whether the defendant is entitled to a writ of error as a matter of right, or is confined to a review by a petition for such writ is thus raised. This necessarily involves the determination of whether the constitutional guarantees of due process and equal protection of the law are fulfilled where a distinction is made in the appellate procedures to be observed by persons convicted prior to and after *Griffin.*

Neither the constitutional requirement of equal protection of the law nor that of due process proscribes a classification between groups differently situated, so long as a reasonable basis for the distinction exists. (*Morey* v. *Doud,* 354 U.S. 457, 1 L. ed. 2d 1485; see concurring opinion in *Griffin* v. *Illinois,* 351 U.S. 12, 100 L. ed 891; *People* v. *Lawrence,* 390 Ill. 499.) Mr. Justice Frankfurter, in his concurring opinion in *Griffin* v. *Illinois,* 351 U.S. 12, at page 24 stated: "But in order to avoid or minimize abuse and waste, a State may appropriately hedge about the oppor-

tunity to prove a conviction wrong. When a State not only gives leave for appellate correction of trial errors but must pay for the cost of its exercise by the indigent, it may protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent. The growing experience of reforms in appellate procedure and sensible, economic modes for securing review still to be devised, may be drawn upon to the end that the State will neither bolt the door to equal justice nor support a wasteful abuse of the appellate process."

Rule 65—1 endeavors to protect the People of the State of Illinois from the costs of preparing and printing abstracts and briefs, presenting argument and the printing and publication of legal opinions in cases before *Griffin,* where careful examination of the record reflects no reversible error. Consequently, we believe that our rule falls well within the intent and purpose outlined in *Griffin.* It provides for the furnishing of a free bill of exceptions to all indigent persons upon a proper showing, which is more than was required by the United States Supreme Court in *Griffin,* and complies with *Eskridge* v. *Washington State Board of Prison Terms and Paroles,* 357 U.S. 214, 2 L. ed. 2d 1269, which later gave retroactive effect to *Griffin.* It grants a substantial concession to persons convicted prior to *Griffin* by allowing them to file a bill of exceptions in this court even though it was not certified within the 100-day period applicable to all other persons, and it devises a procedure by which all errors assigned on the bill of exceptions, as well as those predicated on the common-law record, may be reviewed by this court. Thus, all rights may be vindicated. Therefore, we believe there is a reasonable basis for classification between indigent prisoners convicted after *Griffin,* who are allowed a writ of error as a matter of right and those convicted prior to *Griffin* who file petition for writ of error in accordance with the aforementioned procedure.

Such discretionary review has long been the practice in this State as to writs of error in cases arising under the Workmen's Compensation Act, (Ill. Rev. Stat. 1957, chap. 110, par. 101.60,) in petitions for leave to appeal to this court from the judgments or decrees of Appellate Courts, (Ill. Rev. Stat. 1957, chap. 110, pars. 75, 76 and 101.32,) and in cases arising under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1957, chap. 38, par. 832; chap. 110, par. 101.27.) In all of these cases an examination of the petition and the record is made by the court before allowing or denying an appeal or writ of error. In compensation and leave to appeal cases where a writ of error or appeal is denied there is no written order. The practice in this court in connection with the review of post-conviction cases is identical with the practice in Rule 65—1 cases pertaining to convictions prior to the date of *Griffin.*

In the case at bar, the record before the court consisted of the common-law record and the bill of exceptions, and in the petition for writ of error heretofore adjudicated by this court, the record was comprised of the same items. The errors presently urged are predicated upon the bill of exceptions, save the assignment that the indictment is fatally defective in that the crime was committed on a date subsequent to the indictment and trial, and this error is based on the common-law record. This record contains a copy of the indictment which alleges that on January 26, 1939, the defendant shot Charles Gamble, who died on January 26, 1940. The common-law record was certified in 1947, and the copy of the indictment is prepared on a form in which the words "one thousand nine hundred and forty" appear, with a blank space thereafter for the insertion of the appropriate year. At the place in the copy of the indictment alleging the date of the shooting, the word "forty" is stricken and the words "thirty-nine" are inserted, but at the point where the date of death is alleged, the word "forty" remains. The People filed a

motion for leave to file a corrected certified copy of the indictment, which was allowed, and such copy has been obtained from the clerk of the trial court and filed herein. In this copy both the date of the shooting and the date of the death are alleged to be in 1939. It is apparent that the copy filed by defendant is erroneous even though it is certified by the clerk of the trial court. Where the insufficiency of the indictment is assigned as error, the judgment of conviction will be affirmed if the error complained of was due to the fault of the clerk of the trial court in copying the indictment, provided such error is corrected by an amended record. *People* v. *Howard,* 353 Ill. 28.

We have frequently held that a litigant must raise all errors which can be asserted upon the record before the court, or be held to have waived them, (*People* v. *Kirkrand,* 14 Ill.2d 86; *Old Salem Chautauqua Ass'n* v. *Assembly of God,* 13 Ill.2d 258; *People* v. *123 Punch Boards,* 8 Ill.2d 520,) and that when questions have once been adjudicated by a valid means they may not again be put in issue. (*Ephraim* v. *People,* 13 Ill.2d 456; *People* v. *Byrnes,* 4 Ill.2d 109.) The defendant, by his present writ of error, attempts to relitigate questions which were previously decided adversely to him and seeks to assign an error predicated on the common-law record which could have been, but was not, asserted in his petition for writ of error. Opportunity has heretofore been afforded defendant to vindicate all alleged rights and no new facts have been presented to warrant further review. The defendant has had his day in court.

Neither the guarantees of due process nor equal protection can assure a defendant that his assignments of error will prove to be as comprehensive as he may subsequently desire. However, the orderly administration of justice demands that all litigation must come to an end. Accordingly, we hold that the review to which defendant was entitled was that in connection with his petition for writ of error

and that our denial of the petition for writ of error is *res judicata* as to all errors presently assigned.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*