People of the State of Illinois, Plaintiff-Appellee, v. John P. Voleta, Defendant-Appellant.

Gen. No. 49,727.

First District, Fourth Division.

March 24, 1965.

Rehearing denied April 20, 1965.

279

White & Zummo, of Chicago (Robert K. Kelty, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Joseph V. Roddy, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

In a joint bench trial defendant, John Voleta, was convicted of theft and sentenced to the County Jail for

one year and defendant's brother, Michael Voleta, received a suspended fine. However, only John Voleta filed an appeal.

Defendant contends that the trial court erroneously overruled the motion to suppress certain evidence, that he was not proved guilty beyond a reasonable doubt and that there was a fatal variance in the information.

Officer Mantello of the Chicago Police Department testified that he stopped Michael Voleta, between 7:00 and 8:00 p. m. on November 18, 1963, in the alley behind the tavern at 2752 West Ogden Avenue; that Michael "came out of the rear of the tavern and approached an automobile, which we knew not to be his, with a set of keys in his hand"; that Michael was not arrested at that time; that Michael accompanied them to the tavern where they questioned him as to the whereabouts of his brother, the defendant; that the following conversation with Michael took place:

> He stated he [John Voleta] wasn't at home. We asked him how he knew he wasn't at home, and he said, "Well, if you don't believe me, I'll take you over there. Suit yourselves." He said, "Follow me," and took us to his home.

Officer Mantello further testified that they proceeded to an apartment at 1342 South Fairfield; that on the way to the apartment they had questioned Michael as to his brother's (defendant) occupation; that Michael replied "shoplifting"; that when they reached the apartment the officer saw a number of articles including paint brushes on a bed; that some of the paint brushes were in boxes and some exposed; that Michael stated the property on the bed was his brother's. When asked whether he knew the paint brushes were stolen, the officer testified:

> Well, we saw the paint brushes numbering approximately 60, and by his own admission his brother is a shoplifter, plus recalling the paint company had been robbed.

The officer seized the paint brushes and later arrested the defendant on the charge of theft of paint brushes.

Defendant testified that he lived at the Fairfield apartment in which the brushes were found; that "I sleep on a couch. You can go there . . . and . . . see my blankets and pillows there, because the television is right in the front room." On cross-examination, defendant, when asked whether he lived in the apartment and whether it was his legal residence, answered: "No, I have another apartment."

Michael Voleta testified that he lived at 1342 Fairfield; that there are two bedrooms; that his brother John sleeps "on the couch" when he stays there.

██ The evidence thus conclusively shows that Michael lived in the apartment and that he had at least equal rights to the use and occupation of the premises.

In People v. Shambley, 4 Ill2d 38, at 42, 43, 122 NE2d 172, the court stated:

> [T]he rule seems to be well established that where two persons have equal rights to the use or occupation of premises, either may give consent to a search and the evidence thus disclosed can be used against either.

Since Michael explicitly consented to the search of the apartment, the court correctly overruled the motion to suppress the evidence, i. e., the paint brushes.

Defendant was then tried on the charge of theft (Ill Rev Stats 1963, c 38, § 16–1–d–1).[1] He argues that

---

[1] A person commits theft when he knowingly: . . . (d) Obtains control over stolen property knowing the property to have been

the essential elements of the crime were not proved by competent evidence. People's witness C. I. Shaughnessy, Secretary-Treasurer of Gerts Lumbard Company, testified that the paint brushes found in defendant's Fairfield apartment were stolen:

> The Guildcrest two and a half and 43 three-inch brushes I have seen previously. It is the property of Gerts Lumbard Company. I saw them about two or three weeks ago. There was a burglary at Gerts Lumbard Company the weekend after July 4, 1963. A very substantial quantity of paint brushes of various types were taken.

The witness identified the brushes discovered in defendant's dwelling:

> Guildcrest is the trade name. Our name appears on the package and we are the only one who sells it. We sell in the City of Chicago and these brushes were in our factory at the time of the theft. We code every box. This 7–5–3 meaning July 5, 1963. This merchandise was finished and sitting in the factory. It could not have been distributed to any customer. . . . the brushes could not have been any other place but on our property on July 5, 1963 and they have a value of $102. . . . The defendant did not have our authority to have the property.

██ Defendant testified that the brushes were in the Fairfield apartment for two or three weeks; that he neither purchased nor stole the paint brushes. On the other hand, his brother Michael testified:

> . . . I purchased the brushes. . . . They cost fifty cents apiece. I bought them in October. I did not

---

stolen by another, and (1) Intends to deprive the owner permanently of the use or benefit of the property.

> receive a bill of sale. . . . I planned to give them away for Christmas to relatives and friends. I told the police they were mine. I never told them they were my brother's.

However, Michael's assertion of ownership of the brushes was impeached by a statement he gave to the police. The statement, to which no objection was interposed, stated:

> I said they belonged to my brother, John; then they asked me where my brother had acquired these items. I told them he bought them.

Since defendant failed to object to the admissibility of the statement, he waived his right to complain about its admission. People v. Williams, 28 Ill2d 114, 116, 190 NE2d 796.

Police Sergeant Walsh testified that when he asked defendant where he got the paint brushes, defendant replied: "That's my business."

In People v. Mowry, 6 Ill2d 132, at page 136, 126 NE2d 683, the Supreme Court said:

> Similarly, this court has long recognized that the guilty knowledge and the intent to deprive the owner required to establish the crime are rarely susceptible of direct and positive proof, and has held that such elements may be inferred from all the facts and circumstances, including the acts and declarations of the accused, the presumption being that whatever would convey knowledge or induce belief in the mind of a reasonable person that property was stolen, could, in the absence of countervailing evidence, be sufficient to apprise the accused of the like fact or to induce in his mind a like impression and belief. (Huggins v. People, 135 Ill 243; People v. Mulford, 385 Ill 48; People v. Holtzman, 1 Ill2d 562.)

The trial judge could properly find from the evidence that defendant was in possession of stolen paint brushes; that defendant knew they were stolen and that he intended to deprive the owner of its property.

██ A reviewing court will not substitute its opinion as to the credibility of the evidence unless the proof is so unsatisfactory as to justify a reasonable doubt of guilt. People v. Boney, 28 Ill2d 505, 192 NE2d 920; People v. Hawkins, 54 Ill App2d 212, 203 NE2d 761. We hold that the defendant was proved guilty beyond a reasonable doubt of the crime of theft.

██ Defendant also contends that the decision of the trial court should be reversed because there was a fatal variance in the information, which charged defendant with theft of an individual's property, while the proof showed that a corporation owned the property. We have examined the information; it alleged that the property was stolen from "Gerts Lumbard and Company." The word "company" connotes an incorporated entity under the Business Corporation Act (Ill Rev Stats 1963, c 32, § 157.9a); therefore, ownership was properly alleged. Furthermore, the information showed, and the evidence proved the articles were taken from a corporation. Defendant was fully informed of the offense for which he would be tried and therefore was able to prepare his defense and not be subjected to a subsequent prosecution for the same offense. People v. Wilson, 24 Ill2d 598, 182 NE2d 683.

The decision of the trial court is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.