**People of the State of Illinois, Plaintiff-Appellee, v. Eugene Akins, Defendant-Appellant.**

**Gen. No. 51,769.**

First District, Fourth Division.

July 17, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Norman W. Fishman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Daniel W. Weil, and James Haddad, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

On August 9, 1966, defendant was convicted of the crime of armed robbery after a bench trial and sentenced to the penitentiary for a term of not less than ten nor more than twenty years. On appeal he contends that his guilt was not proved beyond a reasonable doubt and that he was deprived of a fair trial by the incompetence of his counsel.*

The complaining witness, Walter Munson, testified that at four o'clock on the morning of May 21, 1966, he was sitting in his blue 1959 Cadillac at 6050 South Eberhart, that defendant approached him holding his stomach and requested that he be driven to a hospital. Munson stated that when he refused, defendant opened the car door and got in, that defendant put a gun in his side and asked him if he had any money and that upon his answering that he had none, defendant removed the witness' wallet and found $36. Munson said that defendant forced him to drive around and then made him stop at 47th and Dorchester where he was forced to get out of the car. The witness testified that in addition to the car and the money, defendant took a flashlight, some sunglasses and a check. He said that after he got out of the car he called the police, that he described de-

---

* At oral argument defendant abandoned his contention that he did not knowingly waive a jury trial.

fendant as being twenty-three or twenty-four years old, six feet and one-half inch in height, weighing 175 to 180 pounds, having a light brown complexion and wearing a black trench coat. Munson stated that he saw defendant in Holiday Court the next day, that he had poor vision in his left eye but twenty-twenty uncorrected vision in his right eye, that he was not intoxicated at the time of the incident, that People's Exhibit 1 resembled the gun used by defendant and that he saw his car that evening at the pound.

A. J. Holloway testified that on May 21 at 5:30 a. m. he was at 215 or 218 East 51st Street, that defendant came around the corner in a blue 1959 Cadillac; that he had not previously known defendant; that defendant stopped the car, asked for a dime, and got out and that the witness got in. He said that defendant had a woman with him, that he conversed with defendant and was able to observe his face and that he saw defendant at eight o'clock at Provident Hospital.

Grover Cleveland stated that on May 21 at 5:45 or 5:50 a. m. he and Robert Anderson were standing at 43rd and South Park looking at a fire when defendant drove up in a blue 1959 Cadillac and that he and Anderson got in the car and rode to 350 East 44th. He said defendant had a girl with him and that he had seen defendant around the neighborhood before.

Police Officer Robert Anderson testified that he was off duty and that he and Cleveland were watching a fire at 43rd and South Park when defendant arrived in a blue 1959 Cadillac. He said they rode about a block with defendant who was bareheaded and was wearing a dark coat.

It was stipulated that if Officer Jack F. Porche were called he would testify that on May 21, 1966, at about 6:00 a. m. he was called to the area of 45th and Vincennes; that Grover Cleveland pointed out defendant to him; that defendant was standing across the street at

4551 St. Lawrence Avenue, and that upon calling out to him that he was under arrest he turned toward Officer Porche with a gun at his waist. Officer Porche would also have testified that he fired a shot over defendant's head, that defendant then jumped over two fences in an effort to escape, that another police officer found Exhibit 1 under a nearby porch and that a blue 1959 Cadillac was taken into custody.

The parties stipulated that defendant appeared to be about six feet tall, weighed about 200 pounds, was a medium to lightskinned Negro and appeared to be in his mid or late twenties. It was also stipulated that if Officer J. Williams were called he would testify that on May 21 Walter Munson told him that he was approached by a male Negro, twenty-six to twenty-seven years of age, five feet nine or five feet ten inches tall, "dark-complected," wearing a black suit and a blue shirt and carrying a .22-caliber blue steel revolver.

■■ Defendant first contends that his guilt was not proved beyond a reasonable doubt. He argues that there were discrepancies between the description given to the police by the complaining witness, Munson, and other evidence. Defendant points out four variances: age, color, height and clothes. Although defendant was only twenty-one years old, the stipulation stated that he appeared to be "in his twenties somewhere, mid or late twenties." As to color, Munson described his assailant as "dark-complected." It was stipulated that the defendant, a Negro, was "medium to light-complected." Munson's ability to judge whether or not defendant was a darkskinned or lightskinned Negro is limited by the fact that the incident took place outside and at night. Furthermore it is not clear that his reference to a "dark-complected" person meant anything other than that the man was a Negro. There appears to be a discrepancy of two to three inches in the testimony as to the height of the defendant and also as to whether he wore a black

278

suit or a black topcoat. The only time Munson saw the man standing up the man was holding his stomach and Munson was seated in his car. This was at 4:00 a. m. As we stated in People v. Carpenter, 71 Ill App2d 137, at page 145, 217 NE2d 337:

> Slight discrepancies in the testimony of the witnesses do not render that testimony unworthy of belief. People v. Williams, 28 Ill2d 53, 190 NE2d 796.

Furthermore, we would point out that Munson was able to see defendant's face during their ride in the automobile and he identified defendant in Holiday Court the following day as the robber. Moreover, Munson was robbed of his blue 1959 Cadillac and three witnesses testified that they were approached by defendant in a blue 1959 Cadillac within two hours of the robbery and in the same general vicinity. Finally, a blue 1959 Cadillac, which was impounded by the officers who arrested defendant within about ten minutes of the time he was seen by two of the witnesses, was identified by Munson as his and a gun which Munson later identified was found under a porch thirty feet from where defendant was arrested with $92 in cash in his possession. The trial court accepted the testimony of Munson as true and it appears beyond a reasonable doubt that defendant committed the armed robbery. (People v. Clark, 30 Ill2d 216, 195 NE2d 631.)

Defendant also argues that Munson's identification the day after the occurrence, in Holiday Court, is not probative because of the conditions under which it occurred. However, no description of these conditions appears in the record.

■ Defendant's second contention is that he did not receive competent representation because his counsel went to trial without a jury before the same judge who two weeks before had tried defendant on another indict-

ment and heard evidence in aggravation and mitigation in sentencing him. Defendant argues that the situation is controlled by People v. Chatman, 36 Ill2d 305, 223 NE2d 110. In that case, in holding that the defendant was entitled to a new trial due to incompetent representation, the court pointed out that the trial judge had emphatically indicated at the close of the prior trial that he did not believe the testimony of the defendant or his alibi witness and that the defendant believed the judge was prejudiced against him. The judge sentenced the defendant to sixty years in the penitentiary to run consecutively to a sentence of sixty years on the first charge. In the instant case the record of the jury trial at which the judge had previously presided is devoid of any indication of prejudice on the part of the judge toward the defendant. Equally lacking is any indication that defendant himself so regarded the judge. Furthermore, the judge accepted the recommendation of defendant's counsel as to the length of the sentence and sentenced defendant to a term identical with the one he received in the first trial and ordered that they run concurrently. Thus, there is in fact no indication of prejudice toward defendant. We do not believe that defendant received incompetent representation entitling him to a new trial. People v. Bush, 29 Ill2d 367, 194 NE2d 308; People v. Dowling, 95 Ill App2d 220, 238 NE2d 130, and 95 Ill App2d 223, 238 NE2d 134.

The judgment of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.